MARY E. CORCORAN *vs.* THOMAS J. CORCORAN.

JANUARY 17, 1930.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Barrows, and Murdock, JJ.

RATHBUN, J.   This cause is before us on the respondent's exception to the decision of the trial justice granting the petitioner a divorce from bed and board and awarding her alimony in the sum of $7 per week.

The petition was granted on the grounds of extreme cruelty.   In his rescript the trial justice discussed the question of extreme cruelty as follows: "As to acts of actual physical cruelty the testimony is somewhat meagre.   It is evident that during the period of the wife's confinement to the hospital the husband failed to give her any of those attentions which a loving husband should give to his wife, even if the wife had failed to show much respect or love toward him.   It appeals to the Court as showing on the part of the husband failure to make any advance toward a reconciliation and evidences a mental obstinacy on his part to take advantage of an opportunity to renew relations that at one time existed.   This seems to the Court to be evidence of extreme cruelty and united with other acts on the part of the husband to entitle the petitioner to a decree."

Said justice is correct in stating that the evidence as to acts of physical cruelty is somewhat meagre.   It cannot be seriously contended that the husband, in doing any of the few acts complained of, intended to harm his wife, the petitioner.   Perhaps the most serious incident occurred when both parties attempted at the same time to clear the strainer in the kitchen sink which was full of water.   Each party attempted to push the other away from the sink, and one of petitioner's hands came in contact with the faucet with the result that the hand was swollen for a few days. It is by no means clear that this conflict was not commenced

by the wife. The respondent testified that when she pushed him he gave her a "nudge" with his elbow.

The few isolated acts and remarks relied upon as constituting mental cruelty are relatively insignificant in proving extreme cruelty. It does not appear that the husband's conduct while his wife was in a hospital in failing "to give her any of those attentions which a loving husband should give to his wife, even if the wife had failed to show much respect or love toward him", caused any impairment of her health or, under the circumstances, was such as to cause any reasonable apprehension of such result. See 19 C. J. 50. Shortly before the wife entered the hospital she abandoned her husband's home. The house, which was owned by the parties as tenants in common, had recently been conveyed by them to one of their sons who, by arrangement of the parties, had mortgaged the property and thereby obtained $3500—the largest amount which could be borrowed on the security of the property—and delivered the money to the petitioner for her own use. For more than a year before the wife left the home the parties had not spoken to each other. The husband learned from one of the neighbors, that his wife, after obtaining the proceeds from the sale of their property, contemplated abandoning him. He, thereupon, wrote and deposited upon the dining room table a note requesting her not to go away and telling her that if she did go she and their unmarried daughter would be welcome to come back at any time. Instead of replying to this note she sent to the respondent's attorney a letter in which she stated, among other things, that "he can go his way now and I will go mine, and if anything happens that I may not get better, tell him I never want to be brought back to that house. . . . You will please tell him what I said, as I will not say one word to him."

In his rescript the trial justice did not consider the question whether the wife should be denied relief by reason of misconduct admitted by her. There was no serious contention between the parties so long as the respondent

gave substantially all of his wages to his wife. The respondent, who is well past middle life and in poor health, is employed nights at a weekly wage of $26. When the wife was receiving $4 per week from a roomer and a substantial income from wages of adult daughters, the respondent decided to give his wife $10 per week and pay the gas, electric light, wood and coal bills himself. The parties paid no rent as they occupied their own house. Trouble commenced as soon as this decision was put into effect. The petitioner testified as follows: "Well, he gave me $10 a week at first for about a year and I swore when he gave me the $10 that I would never be a wife after what I had done for him all my life, I would never be a wife for $10 a week." . . . "Well, I always treated him all right until he gave me $10 a week. I told him that I wouldn't be a wife and support the house on $10 a week and I didn't." The petitioner accepted the $10 per week but did nothing whatever for the respondent. She did not even speak to him. He purchased and cooked his own food, washed and mended his clothes and cared for his room and bed.

We have frequently stated that findings of fact made by a trial justice on conflicting testimony will not be disturbed unless clearly wrong. However, without passing upon the effect of the petitioner's admitted conduct, it is clear that the acts which said justice found had been established, do not constitute extreme cruelty within the meaning of the statute.

The petitioner may, if she shall see fit, appear on January 24, 1930, and show cause, if any she has, why the cause should not be remitted to the Superior Court with direction to dismiss the petition.

*Russell W. Richmond, A. Truman Patterson,* for petitioner.

*Frank H. Bellin,* for respondent.